UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | 1:16-cv-344-LJO-JLT |
| Plaintiff, | MEMORANDUM DECISION AND ORDER RE MOTION TO INTERVENE (Doc. 123) |
| v. | |
| BIC REAL ESTATE DEVELOPMENT CORP., et al., | |
| Defendants. | |

## I. INTRODUCTION

Sagar LLC moves under Federal Rule of Civil Procedure 24(a) to intervene as of right[1] in this Securities and Exchange Commission ("SEC") enforcement action. The SEC and the Court-appointed Receiver oppose the motion (Docs. 140-41), but Defendants did not file a response to it. The Court took the matter under submission on the papers pursuant to Local Rule 230(g). Doc. 144. For the following reasons, the Court DENIES the motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The SEC brought this enforcement action to enjoin Defendants' allegedly fraudulent investment scheme. The SEC alleges:

> Daniel R. Nase and the corporation he controls, BIC Real Estate Development Corporation ("BIC"), engaged and are engaging in an unregistered and fraudulent offer and sale of BIC

---

[1] Sagar argues "[i]n the alternative, the court should exercise its discretion and grant permissive intervention under Rule 24(b)." Doc. 123-1 at 5. Sagar, however, provides no argument beyond this assertion as to why the Court should permit it to intervene under Rule 24(b). Sagar makes no attempt to explain how the standard for permissive intervention is satisfied here. Additionally, Sagar's complaint-in-intervention (Doc. 123-2) fails to allege an independent basis for federal jurisdiction as is required for permissive intervention. *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997). Accordingly, the Court DENIES Sagar's request for permissive intervention.

>securities. From July 2013 through September 2015, BIC and Nase raised at least $11.6 million from approximately 400 investors nationwide to purchase BIC common stock. While Nase and BIC stated that the purpose of the offering was to provide funds for BIC to purchase real property in Bakersfield, California, and fractional interests in promissory notes for consumer loans, in fact, the offering was simply a scheme by Nase and BIC to defraud investors for his personal benefit.
>
>As part of his fraud, Nase misappropriated approximately $5.5 million of BIC assets by using investor funds to purchase real properties that he then titled or held in his own name or the name of his wife, Relief Defendant Margarita Nase, or in the name of their trust, Relief Defendant BIC Solo 401k Trust. He also transferred cash from BIC's account to his personal account at LendingClub.com, and used BIC's funds to pay his person expenses even as BIC paid Nase and his wife generous salaries.

Doc. 1, Complaint ("Compl.") at ¶¶ 4-5.

Along with its complaint, the SEC filed a motion for a temporary restraining order and a motion to appoint a receiver over BIC and its subsidiaries. Docs. 2, 6. The Court granted both motions. Docs. 10, 13. Shortly afterward, the Court preliminarily enjoined Defendants pursuant to the parties' stipulation between one another and with the Court. Docs. 33, 42. As part of that injunction, the Receiver was permitted to manage a number of real properties and companies owned or managed by BIC and its subsidiaries and affiliates, including Target Oil & Gas Drilling, Inc. ("Target Oil") and WM Petroleum ("WM") (collectively, "the Oil Company"). *See generally* Doc. 42 at 10.

WM owns 100% of Target Oil. Sagar allegedly paid approximately $700,000 to purchase approximately 70,000 shares of stock in WM, making it "at least a 15% owner of [its] stock." Doc. 123-1 at 5. After learning of this case, Sagar's counsel contacted the SEC's counsel and explained that "it believed it should be treated differently from the BIC investors in any liquidation plan or participation in disgorgement of profits." *Id.* The SEC relayed its position that it opposed Sagar's intervening in this case, and ensured Sagar that its "ownership position would be acknowledged and protected." *Id.* Sagar contends that, despite multiple attempts and "[s]everal communications" between its counsel and that of the SEC and Receiver, it has been unable to receive any information concerning the SEC's or the Receiver's plans about how either intends to proceed with liquidation the Oil Company. Specifically, the Receiver has not provided Sagar with records concerning "whether the Receiver has used funds of [the

Oil Company] for the benefit of BIC." Doc. 143 at 6. Sagar contends that its intervention is necessary to ensure that BIC "has not unfairly benefitted from the assets of WM." *Id.*

Sagar moves to intervene as of right under Rule 24(a). Sagar's "fundamental position" is that, as a 15% shareholder of VM, it "should be entitled to 15% of whatever proceeds or other consideration is received for the liquidation o[f] the assets of Target Oil (or sale of the share of WM Petroleum)." *Id.* at 16. Sagar opposes as "unfair" what it perceives as the Receiver's plan to "pool all the proceeds of the sale of the residential real estate assets with the proceeds of the sale of the assets of Target Oil and then distribute these proceeds based on each investor's monetary contribution." *Id.*

The SEC and Receiver oppose Sagar's intervening on numerous grounds. Among other things, they contend Sagar's intervention is not warranted because they adequately represent its interests. *See, e.g.*, Doc. 141 at 12. The SEC and Receiver argue that Sagar seeks nothing more than the ability to have its interests adjudicated first, ahead of the claims of all other individuals and entities harmed by Defendants. The Receiver explains that "[i]n the next few months," it will submit a motion to the Court to establish "a claims process," and that Sagar will be allowed to voice its position on the motion, and will also be able to support or object to the Receiver's claims process, which will distribute Defendants' assets to claimants, such as Sagar. Doc. 140 at 6.

### III. DISCUSSION

To intervene as of right under Rule 24, the applicant for intervention must satisfy four requirements:

> (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties.

*Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). Although the Court "interprets the requirements broadly in favor of intervention," *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998), "[f]ailure to satisfy any one of the requirements is fatal to the application, and [the

3

Court] will not reach the remaining elements if one of the elements is not satisfied." *Perry*, 587 F.3d at 950 (upholding denial of Rule 24 motion to intervene for failure to satisfy adequacy of representation requirement) (citation omitted). The proposed intervenor bears the burden of establishing that each of the four requirements is established. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). The Court's analysis is "guided by practical considerations, not technical distinctions." *Sw. Ctr. for Bio. Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (citations and quotation marks omitted).

For the following reasons, the Court concludes Sagar has failed to satisfy the fourth element—that the SEC and Receiver do not adequately represent its interests. To assess adequacy of representation, the Court evaluates three factors:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Id.* at 1086. The "most important factor" is "how the interest compares with the interests of existing parties." *Id.* Generally, "[t]he burden of showing inadequacy of representation is 'minimal' and is satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use v. Montana Wilderness*, 647 F.3d 897, 898 (9th Cir. 2011) (citing *Arakaki*, 324 F.3d at 1086). But "[i]f an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises. To rebut the presumption, an applicant must make a 'compelling showing' of inadequacy of representation." *Id.* (quoting *Arakaki*, 324 F.3d at 1086).

"Courts are reluctant to allow private parties to intervene in government enforcement actions." *U.S. Commodity Futures Trading Comm'n v. Efrosman*, No. 05 CIV 8422, 2012 WL 2510338, at *4 (S.D.N.Y. June 26, 2012). This is because "government entities, like the SEC, that bring enforcement proceedings are mandated to act in the interest of maximizing the recovery to all defrauded individuals and therefore, are often presumed to be adequately representing the interests of non-party investors."

*S.E.C. v. Callahan*, __ F. Supp. 3d __, 2016 WL 3245336 (E.D.N.Y. June 9, 2016), *appeal docketed*, No. 16-3737 (2d Cir. Nov. 3, 2016). For that reason, courts routinely find that defrauded investors are not entitled under Rule 24 to intervene as of right in SEC enforcement actions. *See, e.g.*, *Callahan*, 2016 WL 3245336, at *26 (collecting cases)[2]; *see also SEC v. TLC Invest. & Trade Co.*, 147 F. Supp. 2d 1031, 1041 (C.D. Cal. 2001) (denying investors' motion to intervene in SEC enforcement action because they had the same goal as the Receiver: "to maximize distributions to defrauded investors").

This is not to say that there are no circumstances under which a defrauded investor may intervene in an SEC enforcement action, however. *See, e.g.*, *SEC v. Navin*, 166 F.R.D. 435, 441 (N.D.Cal. 1995) (permitting investor to intervene as of right in enforcement action). But, as noted, those circumstances do not exist when a defrauded investor has the same ultimate goal as the SEC, such as maximizing the recovery for investors. When that is the case, a mere difference in *how* that goal may be attained is not a "compelling showing" that rebuts the presumption that the SEC (and, by extension, a court-appointed receiver) adequately represents the investor's interests. *See United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 402-03 (9th Cir. 2002) ("Any differences they have are merely differences in strategy, which are not enough to justify intervention as a matter of right.") (citation omitted); *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996) (holding a difference in strategy is insufficient for intervention).

At this time, Sagar has failed to show that the SEC and the Receiver do not adequately represent its interests. The SEC and Receiver are presumed to represent its interests, and Sagar has not rebutted this presumption. Although Sagar has concerns about *how* the SEC and Receiver intend to make Sagar whole again vis-à-vis the Receiver's anticipated claims process, Sagar does not dispute that both the SEC and Receiver intend to maximize the recovery of all defrauded investors, including Sagar. Sagar's

---

[2] The Court notes that the Second Circuit applies the same standards for Rule 24(a) intervention as the Ninth Circuit. *See New York News, Inc. v. Kheel*, 972 F.2d 482, 485 (2d Cir.1992). Accordingly, cases arising out of that Circuit, such as in New York district courts, are instructive here.

difference in opinion of how to do so is a mere difference in strategy, which is insufficient to support Rule 24(a) intervention. *See Nw. Forest Res. Council*, 82 F.3d at 838. "Further, several circuit courts have denied intervention as of right when the applicants may assert their claims in a summary claims process that, both through the procedures used by the receiver and review by the district court, provides adequate due process to the investors." *TLC*, 147 F. Supp. 2d at 1042 (collecting cases). Accordingly, the Court DENIES Sagar's motion to intervene because the SEC and the Receiver adequately represent its interests. *Perry*, 587 F.3d at 950. The Court will address Sagar's concerns through the Receiver's forthcoming claims process.[3]

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court DENIES Sagar's motion to intervene (Doc. 123).

IT IS SO ORDERED.

Dated:   **January 9, 2017**          /s/ Lawrence J. O'Neill
                                       UNITED STATES CHIEF DISTRICT JUDGE

---

[3] The Receiver indicates that "Sagar will be afforded an opportunity to support or oppose the Receiver's motion, and, later, the Receiver's proposal for treatment of Sagar's claim. Thereafter Sagar will also be afforded an opportunity to support or oppose the Receiver's plan for distribution of assets to claimants with allowed claims." Doc. 140 at 5. The Court assumes the Receiver intends to permit Sagar (and other parties) to voice their support or opposition to his plans in this Court. If that is not the case, the SEC and the Receiver are directed to revise their anticipated claims process to allow any interested third-party to voice its concerns in this Court, and shall inform any interested third-party of their right to do so after a reasonable effort to meet and confer with the Receiver and/or the SEC to resolve any disputes informally.