**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 1:16-cv-00344-LJO-JLT |
| **Plaintiff,** | MEMORANDUM DECISION AND ORDER GRANTING RECEIVER'S MOTION FOR APPOINTMENT AS ELISOR |
| **v.** | |
| BIC REAL ESTATE DEVELOPMENT CORPORATION and DANIEL R. NASE, individually and d/b/a BAKERSFIELD INVESTMENT CLUB, | **(ECF No. 220)** |
| **Defendants,** | |
| BIC SOLO 401K TRUST and MARGARITA NASE, | |
| **Relief Defendants.** | |

## I. <u>INTRODUCTION</u>

The Court-appointed receiver, David Stapleton ("Receiver") moves the Court for an order appointing him as elisor for purposes of restoring real property interests to receivership entities, or, in the alternative, for an order to show cause regarding civil sanctions against the noncompliant investors or, in the alternative, for an order authorizing the Receiver to commence turnover litigation against noncompliant investors to recover all outstanding property interests. (ECF No. 220.) For the reasons set forth below, the Court GRANTS the Receiver's motion and appoints him as elisor.

## II. <u>BACKGROUND</u>

On March 11, 2016, the Securities and Exchange Commission ("SEC" or "Commission") brought a civil enforcement action against BIC Real Estate Development Corporation ("BIC") and its owner Daniel R. Nase ("Nase") (collectively, "Defendants") for securities fraud. The Complaint alleged

that Nase and BIC raised millions of dollars from investors in the fraudulent offer and sale of unregistered securities. (Complaint ("Compl.") ¶ 4.) BIC represented itself as a real estate investment company, buying real estate primarily located in Bakersfield, California, and renting or flipping it for profit. (Compl. ¶ 20.) In response to the SEC's investigation, but prior to the initiation of the SEC's action, Nase implemented a "liquidation plan" for BIC. (*Id.* ¶¶ 100-01.) The plan distributed some of BIC's assets (such as real property) to investors who owned BIC stock. (*Id.* ¶ 93.) As a result, fractionalized interests in certain real properties held by BIC were conveyed to some BIC investors. (*Id.*) Nase and BIC have both consented to entry of judgment against them. (ECF Nos. 79, 214, 219, 225.)

On April 8, 2016, the Court appointed David Stapleton as the permanent receiver and charged him with marshaling and managing the assets underlying the fraudulent scheme. (ECF No. 42, ("Appointment Order").) Included in BIC's holdings were approximately sixty residential real estate properties primarily located in or near Bakersfield, California. (Compl. ¶¶ 20, 62.) Specifically, the Appointment Order: 1) vested the Receiver with exclusive authority and control of the assets of the receivership entities; 2) provided that all persons in possession or control of receivership assets must give control of that property to the Receiver; and 3) barred all persons from interfering with the Receiver's recovery efforts. (ECF No. 42 at 9-11.) Armed with the Appointment Order, the Receiver reached out to investors holding fractionalized interests in properties improperly conveyed in the pre-receivership liquidation in an effort to restore real property interests to the receivership. (Declaration of David Stapleton ("Stapleton Decl.") ¶¶ 3-6.)

On May 2, 2017, the Receiver filed a motion asking the Court for an order appointing the Receiver as elisor for purposes of restoring real property interests to the receivership entities or, in the alternative for an order to show cause regarding civil sanctions, or, in the alternative, for an order authorizing the Receiver to commence turnover litigation against noncompliant investors to recover all outstanding property interests. (ECF No. 220; ECF No. 221.) In the motion, the Receiver explains that he has been able to restore real property interests to all but twelve of the residential real properties

conveyed to investors during BIC's liquidation plan. (Stapleton Decl. ¶ 5.) Thirty-nine investors who hold fractionalized interests in those twelve properties have either refused to cooperate with the Receiver in restoring title of those properties, or have not responded to the Receiver's communications. (*Id.*) The Receiver represents that he has provided each noncompliant investors with notice of, and access to, the Court's Appointment Order. (ECF No. 221 at 14; Stapleton Decl. ¶ 8.) The Receiver also served each of the noncompliant investors with the motion. (ECF No. 220-2.) On May 23, 3017, the SEC filed a response in support of the Receiver's motion. (ECF No. 228.) The SEC noted that, "[a]ppointing the Receiver as elisor would be the most efficient and cost-effective means of addressing the problem of fractionalized interests in properties." (*Id.*) The Receiver's motion was not opposed by any party.

On May 30, 2017, the Receiver filed a reply and update, notifying the Court that in the interim between the filing of the Receiver's motion and the reply, five previously noncompliant investors agreed to the Receiver's turnover requests and had already provided notarized documents sufficient to restore such interest. (ECF No. 229 at 3.) Nine additional formerly noncompliant investors had provided the Receiver with meaningful assurances of their intent to abide by the turnover provisions to restore fractionalized property interests to the receivership. (*Id.* at 4.) However, despite the Receiver's well-documented efforts to persuade investors to relinquish their interest in the improperly conveyed property over a nine month period, twenty-five investors, holding fractionalized interests in ten properties, are still refusing to comply with the Court's recovery plan. (*Id.*; Stapleton Decl. ¶ 6.) The Receiver reaffirmed his request for appointment as elisor to restore real property interest in the ten properties held, or partially held, by noncompliant investors to the receivership. (*Id.* at 5.)

Venue is proper in this Court, and the matter is suitable for disposition without oral argument pursuant to Local Rule 230(g).

### III. <u>STANDARD OF DECISION</u>

District courts have "broad powers and wide discretion" to fashion relief and administer federal receiverships. *SEC v. Wencke*, 622 F.2d 1363, 1371 (9th Cir. 1980). "The federal courts have inherent

equitable authority to issue a variety of 'ancillary relief' measures in actions brought by the SEC to enforce the federal securities laws." *Id.* at 1369.

## IV. DISCUSSION

**A.     Use of Summary Procedures**

"[T]he traditional rule is that summary proceedings are appropriate and proper to protect equity receivership assets." *United States v. Ariz. Fuels Corp.*, 739 F.2d 455, 458 (9th Cir.1984); *see also SEC v. Sharp Capital, Inc.*, 315 F.3d 541, 545 (5th Cir. 2003) (finding that summary procedures were appropriate to determine if a particular asset was the property of the receiver); *SEC v. Basic Energy & Affiliated Res.*, 273 F.3d 657, 668 (6th Cir. 2001); *SEC v. Elliott*, 953 F.2d 1560, 1566-67 (11th Cir. 1992). "[S]ummary proceedings are within the broad powers and wide discretion the district court enjoys to adjudicate relief in an equity receivership proceeding." *Sharp Capital*, 315 F.3d at 545 (citing *Elliot*, 953 F.2d at 1566). A court should ensure that the third parties are afforded due process, and thus have adequate notice and an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *see also SEC v. Wencke*, 783 F.2d 829, 838 (9th Cir. 1986) (appellant's due process challenge to the summary proceedings failed because he had notice of the proceedings, had an opportunity to file responsive pleadings and perform discovery, and could have presented evidence and cross-examined witnesses at hearings). Summary procedures are appropriate where a receiver can establish through direct evidence that the subjects of the proposed summary proceedings are in possession of receivership property. *See SEC v. Bjork*, No. CIV.A. H-11-2830, 2012 WL 1392082, at *3 (S.D. Tex. Apr. 19, 2012) (summary procedures were appropriate where the receiver could establish that third-party debtors were in possession of receivership property using "summary judgment type procedures.").

Summary procedures are appropriate to protect the receivership assets in this case. First, the implicated third parties – noncompliant investors – have been provided notice of this Court's

Appointment Order[1], as well as the Receiver's instant motion, and have had an opportunity to be heard by this Court.[2] None of noncomplaint investors, nor any other party, has opposed the motion or otherwise indicated its opposition to the turnover provisions Court's Appointment order despite ample notice and opportunity to be heard.

Second, the Receiver's review of the relevant books and records, as well as Defendant Nase's own admissions,[3] confirm that the conveyances of fractionalized interests in real property pursuant to BIC's liquidation plan were improper and not commensurate with each investor's actual contributions to BIC. (Stapleton Decl. ¶ 3; ECF No. 69 at 11.) In the Receiver's First Interim Report, accepted by the Court on June 14, 2016 (ECF No. 76), the Receiver indicated that, while he had not completed a full analysis, "the transfers of interests in real property Assets made pursuant to the Entities' pre-receivership liquidation plan were not undertaken in a manner consistent with any specific allocation methodology, nor with the investors' respective individual interests in such Assets." (ECF No. 69 at 11.) Therefore, the Receiver recommended that all interests conferred upon investors as part of the liquidation plan be returned to the receivership so that the Receiver could restore complete record ownership of those assets for the benefit of all investors and creditors.[4] The Receiver's findings, which are undisputed, leave no doubt that the fractionalized interests held by the noncompliant investors are

---

[1] The Appointment Order makes clear that third parties are obligated to turn over receivership assets, and bars any person from interfering with the Receiver's responsibilities. (ECF No. 42.)

[2] The Court vacated the hearing on the Receiver's motion pursuant to Local Rule 230(g) after the reply deadline lapsed. Nonetheless, the requirement of providing an opportunity to be heard can be satisfied by written submission rather than by oral or evidentiary hearing. *Windsor v. Boushie*, No. 14-36042, 2017 WL 393715, at *1 (9th Cir. Jan. 30, 2017). The noncompliant third parties whose rights are potentially implicated by the Receiver's motion failed to file any written opposition to it.

[3] On July 26, 2016, the Court entered judgment against Nase, pursuant to which he admitted the allegations in the Complaint, including the allegations regarding the improper liquidation plan. (ECF No. 83.)

[4] As the Receiver and the SEC both observe, the fractionalized interests have no independent value. (ECF No. 221 at 5 n.3 ("the conveyances are, in their present form, valueless"); ECF No. 228 ("the investors who are holding fractionalized interests cannot, as a practical matter, monetize those interests.").) To the extent investors improperly conveyed fractionalized interests in real property could band together to convey or distribute that property, it would be to the detriment of other investors, since it is undisputed that the fractionalized interests were not distributed in a manner consistent with the investors' individualized interests in the property.

1  subject the non-interference and turnover provisions in the Appointment Order. (Stapleton Decl. ¶ 3;

2  First Interim Report at 10-12, ECF No. 69.)

3      Lastly, it is in the best interest of all investors and creditors that these assets are consolidated and

4  liquidated in an expeditious and cost conscious manner. The use of summary procedures is necessary to

5  protect the equity receivership for the benefit of all parties.

6  **B.    Motion for Order Appointing Receiver as Elisor**

7      The Receiver requests that the Court appoint him as elisor for the purpose of restoring its

8  interests in the real property rightfully belonging to the receivership, but which is claimed, in whole or

9  in part, by noncompliant investors who received interests as part of the pre-receivership liquidation plan.

10     Courts use elisors to enforce their orders. *Blueberry Properties, LLC v. Chow*, 230 Cal. App. 4th

11 1017, 1021 (2014). Under California law, an elisor may be appointed to execute a deed or document. *Id.*

12 ("[a]s used in the case at bar, consistent with its common legal meaning, an elisor is a person appointed

13 by the court to perform functions like the execution of a deed or document."); *see also Rayan v.*

14 *Dykeman*, 224 Cal. App. 3d 1629, 1635 (1990) (affirming trial court order appointing elisor to execute

15 quitclaim deed). Federal courts have likewise recognized the use of elisors to enforce their orders,

16 including conveyance of real property interest. *In re Twenty-First Century Res., Inc.*, 92 F. App'x 430,

17 431-32 (9th Cir. 2004) (recognizing use of bankruptcy trustee as elisor to convey real property); *In re*

18 *Kim*, No. 11-20034-PB7, 2014 WL 5064041, at *1 (Bankr. S.D. Cal. June 18, 2014) (concluding that the

19 court would appoint an elisor to execute documents if bankruptcy party failed to comply with court

20 order).

21     Given the propriety of summary procedures, the Court's broad equitable powers to administer

22 the receivership, and the advantage to all parties in reducing the cost of these proceedings, the Court

23 finds it appropriate to appoint the Receiver as elisor for purposes of restoring real property interest in the

24 fractionalized property interest that have not been voluntarily restored as of the date of this order.

25 Restoring interest in the properties to the receivership will allow the Receiver to sell these properties for

26                                                        6

1  the benefit of all investors and creditors in a timely and efficient manner.

2  **V. CONCLUSION AND ORDER**

3  For the reasons stated above, the Receiver's Motion (ECF No. 220) is GRANTED.

4

5  IT IS SO ORDERED.

6  Dated:  __June 15, 2017__                     _____**/s/ Lawrence J. O'Neill**_____

7                                                UNITED STATES CHIEF DISTRICT JUDGE