# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BIC REAL ESTATE DEVELOPMENT CORPORATION and DANIEL R. NASE, individually and d/b/a BAKERSFIELD INVESTMENT CLUB,<br><br>　　　　Defendants,<br><br>BIC SOLO 401K TRUST and MARGARITA NASE,<br><br>　　　　Relief Defendants. | Case No. 1:16-cv-00344-LJO-JLT<br><br>**MEMORANDUM DECISION AND ORDER GRANTING RECEIVER'S MOTION FOR APPOINTMENT AS ELISOR FOR PURPOSES OF RESTORING OIL COMPANY PROPERTY INTERESTS TO THE RECEIVERSHIP ENTITIES**<br><br>**(ECF No. 282)** |

## I. INTRODUCTION

The Court-appointed receiver, David Stapleton ("Receiver") moves the Court for an order appointing him as elisor for purposes of restoring interests in oil company assets to the receivership entities. (ECF No. 282.) The SEC filed a response in support of the Receiver's motion. The Receiver's motion was not opposed by any party. This matter is suitable for disposition without oral argument pursuant to Local Rule 230(g).

1

## II. BACKGROUND

On March 11, 2016, the Securities and Exchange Commission ("SEC" or "Commission") brought a civil enforcement action against BIC Real Estate Development Corporation ("BIC") and its owner Daniel R. Nase ("Nase") (collectively, "Defendants") for securities fraud. The Complaint alleged that Nase and BIC raised millions of dollars from investors in the fraudulent offer and sale of unregistered securities. (Complaint ("Compl.") ¶ 4.) BIC represented itself as a real estate investment company, buying real estate primarily located in Bakersfield, California, and renting or flipping it for profit. (Compl. ¶ 20.) BIC also held oil company assets associated with WM Petroleum, Target Oil & Gas Drilling, Inc., and affiliated entities ("Oil Company Assets"). In response to the SEC's investigation, but prior to the initiation of the SEC's action, Nase implemented a "liquidation plan" for BIC. (*Id.* ¶¶ 100-01.) The plan distributed some of BIC's assets (such as real property) to investors who owned BIC stock. (*Id.* ¶ 93.) As a result, fractionalized interests in certain real properties held by BIC were conveyed to some BIC investors. (*Id.*) The Receiver recently discovered that the Receivership Entities also conferred fractionalized interests in the Oil Company Assets to approximately 97 unique investors in the pre-receivership period. (ECF No. 282 at 2.) Nase and BIC have both consented to entry of judgment against them. (ECF Nos. 79, 214, 219, 225.)

On April 8, 2016, the Court appointed David Stapleton as the permanent receiver and charged him with marshaling and managing the assets underlying the fraudulent scheme. (ECF No. 42, ("Appointment Order").) On July 27, 2017, this Court issued an Order Authorizing and Approving Receiver's Sales Procedures for Oil Company and Authorizing Receiver's Engagement of Oil Company Broker (the "Oil Sales Procedures Order"). (ECF No. 268). Since the Court's issuance of the Sale Order, the Receiver has been actively marketing the saleable Oil Company Assets. However, absent the restoration of the fractionalized Oil Company Assets, the Receiver cannot complete the sale of the Oil Company Assets as contemplated by the Oil Sales Procedures Order, meaning those assets cannot be monetized for the benefit of the receivership entities' investors and creditors. (ECF No. 283 at 2.)

It appears that a total of 127 fractionalized interests in Oil Company Assets were conveyed to a total of 97 Receivership Entity investors, many of whom have already restored these interests to the Receivership Entities. (Stapleton Decl. ¶ 6, ECF No. 284.) As of the date of the motion was filed, 85 of the 127 Oil Company interests in issue had been voluntarily restored to the Receivership Entities. (*Id.*) However, there are still 41 unique investors who have failed to restore the remaining fractionalized interests in the Oil Company Assets to the receivership entities. (*Id.*)

The Receiver filed the instant motion asking the Court for an order appointing him as elisor for purposes of restoring interests in the Oil Company Assets. The Court has previously appointed the Receiver as elisor for purposes of restoring real property interests in the residential real property belonging to the receivership entities. (ECF No. 244.)

### III. STANDARD OF DECISION

District courts have "broad powers and wide discretion" to fashion relief and administer federal receiverships. *SEC v. Wencke*, 622 F.2d 1363, 1371 (9th Cir. 1980). "The federal courts have inherent equitable authority to issue a variety of 'ancillary relief' measures in actions brought by the SEC to enforce the federal securities laws." *Id.* at 1369.

### IV. DISCUSSION

**A.    Use of Summary Procedures**

"[T]he traditional rule is that summary proceedings are appropriate and proper to protect equity receivership assets." *United States v. Ariz. Fuels Corp.*, 739 F.2d 455, 458 (9th Cir. 1984); *see also SEC v. Sharp Capital, Inc.*, 315 F.3d 541, 545 (5th Cir. 2003) (finding that summary procedures were appropriate to determine if a particular asset was the property of the receiver); *SEC v. Basic Energy & Affiliated Res.*, 273 F.3d 657, 668 (6th Cir. 2001); *SEC v. Elliott*, 953 F.2d 1560, 1566-67 (11th Cir. 1992). "[S]ummary proceedings are within the broad powers and wide discretion the district court enjoys to adjudicate relief in an equity receivership proceeding." *Sharp Capital*, 315 F.3d at 545 (citing *Elliot*, 953 F.2d at 1566). A court should ensure that the third parties are afforded due

3

process, and thus have adequate notice and an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *see also SEC v. Wencke*, 783 F.2d 829, 838 (9th Cir. 1986) (appellant's due process challenge to the summary proceedings failed because he had notice of the proceedings, had an opportunity to file responsive pleadings and perform discovery, and could have presented evidence and cross-examined witnesses at hearings). Summary procedures are appropriate where a receiver can establish through direct evidence that the subjects of the proposed summary proceedings are in possession of receivership property. *See SEC v. Bjork*, No. CIV.A. H-11-2830, 2012 WL 1392082, at *3 (S.D. Tex. Apr. 19, 2012) (summary procedures were appropriate where the receiver could establish that third-party debtors were in possession of receivership property using "summary judgment type procedures.").

Summary procedures are appropriate to protect the receivership assets in this case. First, the implicated third parties – noncompliant investors – have been provided notice of this Court's Appointment Order[1], as well as the Receiver's instant motion[2], and have had an opportunity to be heard by this Court.[3] None of noncomplaint investors, nor any other party, has opposed the motion or otherwise indicated its opposition to the turnover provisions Court's Appointment order despite ample notice and opportunity to be heard.

Second, the Receiver's review of the Oil Company Assets confirms that the conveyances of fractionalized interests in the Oil Company Assets pursuant to BIC's liquidation plan were improper and not commensurate with each investor's actual contributions to BIC. (Stapleton Decl. ¶ 7.) Therefore, the

---

[1] The Appointment Order makes clear that third parties are obligated to turn over receivership assets, and bars any person from interfering with the Receiver's responsibilities. (ECF No. 42.)

[2] The Proof of Service indicates that the identified investors were served with a copy of the Receiver's motion. (ECF No. 282-2.)

[3] The Court vacated the hearing on the Receiver's motion pursuant to Local Rule 230(g) after the reply deadline lapsed. Nonetheless, the requirement of providing an opportunity to be heard can be satisfied by written submission rather than by oral or evidentiary hearing. *Windsor v. Boushie*, No. 14-36042, 2017 WL 393715, at *1 (9th Cir. Jan. 30, 2017). The noncompliant third parties whose rights are potentially implicated by the Receiver's motion failed to file any written opposition to it.

4

Receiver recommends that all interests conferred upon investors in the pre-receivership period should be returned to the receivership so that the Receiver could restore complete record ownership of those assets for the benefit of all investors and creditors. The Receiver's findings, which are undisputed, leave no doubt that the fractionalized interests in the Oil Company Assets held by the noncompliant investors are subject the non-interference and turnover provisions in the Appointment Order. (Stapleton Decl. ¶ 7.)

Lastly, it is in the best interest of all investors and creditors that these assets are consolidated and liquidated in an expeditious and cost-conscious manner. The use of summary procedures is necessary to protect the equity receivership for the benefit of all parties.

**B.     Motion for Order Appointing Receiver as Elisor**

The Receiver requests that the Court appoint him as elisor for the purpose of restoring its interests in Oil Company Assets rightfully belonging to the receivership, but which are claimed, in whole or in part, by noncompliant investors who received interests in the pre-receivership period.

Courts use elisors to enforce their orders. *Blueberry Properties, LLC v. Chow*, 230 Cal. App. 4th 1017, 1021 (2014). Under California law, an elisor may be appointed to execute a deed or document. *Id.* ("[a]s used in the case at bar, consistent with its common legal meaning, an elisor is a person appointed by the court to perform functions like the execution of a deed or document."); *see also Rayan v. Dykeman*, 224 Cal. App. 3d 1629, 1635 (1990) (affirming trial court order appointing elisor to execute quitclaim deed). Federal courts have likewise recognized the use of elisors to enforce their orders, including conveyance of real property interest. *In re Twenty-First Century Res., Inc.*, 92 F. App'x 430, 431-32 (9th Cir. 2004) (recognizing use of bankruptcy trustee as elisor to convey real property); *In re Kim*, No. 11-20034-PB7, 2014 WL 5064041, at *1 (Bankr. S.D. Cal. June 18, 2014) (concluding that the court would appoint an elisor to execute documents if bankruptcy party failed to comply with court order).

Given the propriety of summary procedures, the Court's broad equitable powers to administer the receivership, and the advantage to all parties in reducing the cost of these proceedings, the Court

5

finds it appropriate to appoint the Receiver as elisor for purposes of restoring the receivership entities' interest in the Oil Company Assets that have not been voluntarily restored as of the date of this order. Restoring interest in the Oil Company Assets to the receivership will allow the Receiver to sell these assets for the benefit of all investors and creditors in a timely and efficient manner.

## V. **CONCLUSION AND ORDER**

For the reasons stated above, the Receiver's Motion (ECF No. 282) is GRANTED.

IT IS SO ORDERED.

Dated: **October 12, 2017**　　　　　　　　**/s/ Lawrence J. O'Neill**
UNITED STATES CHIEF DISTRICT JUDGE