DAVID R. ZARO (BAR NO. 124334)
JOSHUA A. DEL CASTILLO (BAR NO. 239015)
NORMAN M. ASPIS (BAR NO. 313466)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        jdelcastillo@allenmatkins.com
        naspis@allenmatkins.com

Attorneys for Receiver
DAVID P. STAPLETON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>BIC REAL ESTATE DEVELOPMENT CORPORATION and DANIEL R. NASE, individually and d/b/a BAKERSFIELD INVESTMENT CLUB,<br><br>Defendants,<br><br>BIC SOLO 401K TRUST and MARGARITA NASE,<br><br>Relief Defendants. | Case No. 1:16-cv-00344-NONE-JLT<br><br>FINAL REPORT AND ACCOUNTING OF RECEIVER, DAVID P. STAPLETON<br><br>[Notice of Motion and Motion; Memorandum of Points and Authorities; Declaration of David P. Stapleton; Final Fee Application; and [Proposed] Order submitted concurrently herewith]<br><br>Date: July 1, 2020<br>Time: 8:30 a.m.<br>Ctrm: 4, 7th Floor |

**TO ALL PARTIES, THEIR COUNSEL OF RECORD, AND THIS HONORABLE COURT:**

**PLEASE TAKE NOTICE THAT** on July 1, 2020, at 8:30 a.m., in Courtroom 4 of the above-entitled Court, located at 2500 Tulare Street, Fresno, California 93721, and in accordance with: (a) this Court's April 8, 2016 Stipulated Preliminary Injunction and Orders (1) Freezing Assets, and (2) Appointing A Permanent Receiver (the "Appointment Order") (ECF No. 42); (b) this Court's

May 6, 2016 Supplemental Order in Aid of Receivership (the "Order in Aid") (ECF No. 58); (c) this Court's June 6, 2016 Order on First Interim Report and Petition for Further Instructions (the "First Interim Report Order"); and (d) Local Rule 232, David P. Stapleton (the "Receiver"), the Court-appointed permanent receiver for Defendant BIC Real Estate Development Corporation ("BIC") and its subsidiaries and affiliates including, but not limited to, WM Petroleum, Target Oil & Gas Drilling, Inc., Tier 1 Solar Power Company, Tier 1 Solar Power Company, LLC, and Home Sweet Holdings (collectively, the "Receivership Entities" or "Entities"), hereby submits his Final Report and Accounting (the "Final Report"). This Final Report provides a summary of the Receiver's activities during the course of the above-captioned receivership and appends the Receiver's final accounting summary for the estate of the Receivership Entities (the "Estate").

The goals of the instant receivership having been satisfied, and funds remaining available for distribution in an estimated aggregate amount in excess of approximately $610,000 (the "Final Distribution Amount"), the Receiver recommends that the instant receivership be terminated and the Receiver discharged and released, upon the completion of certain wind-down tasks, including a second and final, *pro rata* distribution on allowed, non-subordinated claims, in the Final Distribution Amount (the "Final Distribution").

## I. EXECUTIVE SUMMARY.

In accordance with the Appointment Order, the Order in Aid, the First Interim Report Order, and the Court's subsequent orders regarding the Receiver's administration of the Estate, the Receiver diligently pursued, and ultimately fulfilled, each of his responsibilities to the fullest extent possible. The Receiver's most significant accomplishments during the pendency of the instant receivership include:

- Completing a detailed review and analysis of the business and financial activities of the Receivership Entities, which, among other things, enabled the

Receiver to complete a money-in/money-out ("MIMO") accounting of the net contributions of investors in, and creditors of, the Receivership Entities;

- Marshaling and preserving all receivership assets ("Receivership Assets" or "Assets"), ultimately resulting in gross recoveries in the amount of approximately $12 million, for the benefit of the Receivership Entities and their investors and creditors, including via the management and sale of real and personal property Assets, rents collected from real property Assets, and funds turned over from receivership-related bank accounts;

- Establishing a process for, and later reviewing and processing all timely investor and creditor claims against the Receivership Entities, conferring with claimants regarding claims, as necessary and appropriate, and developing and securing Court approval of his recommendations regarding the allowance and denial, amounts, and prioritization of claims of investors and other creditors of the Entities;

- Successfully opposing a motion by Valley Mortgage Investments, Inc. ("VMI"), a secured creditor of the Receivership Entities, to intervene in order to foreclose on certain of the Entities' otherwise salable residential real properties (the "Properties"), thereby preserving millions of dollars in gross value for the benefit of the Estate;

- Preparing materials required by this Court in connection with the administration and adjudication of VMI's later claim against the Entities for reimbursement of attorneys' fees, ultimately resulting in the withdrawal of VMI's claim against the Estate for attorneys' fees and costs, yielding a net savings to the Estate of $87,000; and

- Developing, and securing Court approval of, his proposed first interim distribution to claimants, pursuant to which the Receiver made an initial distribution, in the aggregate amount of $1.5 million, on a *pro rata* basis on allowed, non-subordinated claims, which also contemplated a second and final distribution of

more than $500,000 on allowed, non-subordinated claims. This final distribution is now ready to be completed, in an estimated aggregate amount in excess of approximately $610,000, exceeding the Receiver's original estimate.

Over the course of the receivership, the Receiver administered and protected the Receivership Assets, including conferring with investors to keep them apprised of the status of the receivership and his administrative efforts, including in connection with the claims process. As reflected in this Final Report and in the concurrently filed Motion for Order: (1) Approving Final Report and Accounting; (2) Authorizing Payment of Final Fee Application of Receiver and Professionals; (3) Authorizing Final Distribution on Allowed Claims; (4) Authorizing Submission of Appropriate Tax Returns; (5) Authorizing Abandonment or Destruction of Records; and (6) Closing Receivership Case and Discharging Receiver (the "Wind-Down Motion"), the Receiver has satisfied the duties and obligations established by this Court at the inception of this receivership. Accordingly, the Receiver has determined, in his reasonable business judgment, that the costs of continuing the receivership now outweigh its benefits, and that the receivership should be wound down and closed, and the Receiver discharged and released.

The Receiver presently holds approximately $1.5 million, in cash, for the benefit and administration of the Receivership Entities, including the gross proceeds of approximately $900,000.00 resulting from the sale of the Assets of WM Petroleum and Target Oil & Gas Drilling, Inc. (collectively, the "Oil Company"). Accordingly, and assuming the Court authorizes payment of all previously approved holdbacks, and payment of the fees and expenses as requested in the Final Fee Application, the Receiver anticipates being able to make the Final Distribution, on a *pro rata* basis, on allowed, non-subordinated claims, after the payment of all fees, expenses, and costs, in the Final Distribution Amount. This information, and more, is detailed in the Receiver's final Standardized Fund Accounting Report (the "Final Accounting"), attached hereto as **Exhibit 1**.

## II. RELEVANT PROCEDURAL BACKGROUND.

The Receiver invites the Court and all interested parties to review his prior quarterly, supplemental, and accounting reports for a general summary of the relevant facts underlying the above-captioned receivership case, the Receiver's MIMO analysis, and the activities of the Receiver and the Receiver's Professionals[1].

## III. SUMMARY OF PRIOR ACTIVITIES.

As reflected in the Receiver's various quarterly, supplemental, and accounting reports (see, e.g., ECF Nos. 30, 69, 74, 85, 101, 151, 167, 295, 342, 420, and 435), the Receiver largely focused his efforts on the following key areas:

First, the Receiver sought, obtained, and reviewed relevant documents and other information relating to the business and financial activities of the Entities from a variety of sources, including the Entities, the Securities and Exchange Commission (the "Commission"), and third-party entities in order to, among other things: (1) prepare necessary accountings; (2) develop an assessment of the Receivership Entities' financial activities and condition; (3) prepare necessary reports and other filings for the Court; (4) identify recoverable Receivership Assets, in all forms, including cash and salable Assets; and, as detailed further below, (5) review and evaluate claims by investors and other creditors against the Entities, and develop and secure Court approval of his distribution recommendations.

Second, having completed all appropriate accounting and analysis, the Receiver sought to fund the receivership via: (1) recovering available cash Assets; and (2) selling hard Assets or abandoning those Assets that the Receiver determined, in his reasonable business judgment, were not worth pursuing or selling, in order to maximize the recovery of Assets for the benefit of the Receivership Entities, and their investors and creditors. As part of the Receiver's Asset recovery efforts, the

---

[1] For the purposes of this Final Report, the Receiver's "Professionals" include his counsel of record in the instant receivership, Allen Matkins Leck Gamble Mallory & Natsis LLP.

Receiver secured Court authority to act as an elisor for the purpose of restoring to the Receivership Entities complete record ownership of: (1) those Properties for which fractional interests were previously conveyed to Entity investors in connection with the Entities' pre-receivership, so-called liquidation plan, thereby enabling the Receiver to successfully market and sell those Properties; and (2) certain outstanding fractionalized ownership interests in the Oil Company, leading to its eventual Court-approved sale for $900,000.

Third, having completed all appropriate accounting and analysis, the Receiver developed and secured Court approval of a claims process whereby investors in, and creditors of, the Receivership Entities could submit claims based upon their net losses, as measured by the difference between their monetary contributions to, and payments from, the Receivership Entities (see ECF No. 311). Once the Receiver completed processing claims submitted by Entity investors and creditors, the Receiver secured Court approval of his recommended treatment of allowed claims and his proposed plan for distributions to allowed claimants (see ECF Nos. 393 and 440, respectively). The Receiver has since completed an initial distribution, pursuant to this Court's December 2, 2019 Order Granting Motion of Receiver, David P. Stapleton, for Order Authorizing First Interim Distribution on Allowed, Non-Subordinated Claims (ECF No. 444). He now contemplates making a second and final distribution in the Final Distribution Amount.

Fourth, the Receiver attended to the overall administration of the Estate including, but not limited to, conferring with investors regarding the status of the receivership, and preparing and submitting appropriate tax filings.

### A. Document Recovery And Review, Investigation, And Forensic Accounting.

Pursuant to the Appointment Order, the Receiver conducted a review and analysis of the books and records maintained at BIC, which included a master ledger, investor files, real property documents, and other materials, and also

obtained productions of additional records from third-party sources, including the Commission. The Receiver diligently reviewed relevant documents and other information relating to the business and financial activities of the Entities in order to, among other things: (1) prepare necessary accountings; (2) develop an assessment of the Receivership Entities' financial activities and condition; (3) prepare necessary reports and other filings for the Court; (4) identify recoverable Receivership Assets, in all forms, including cash and salable Assets; and, later (5) review and evaluate claims by investors and other creditors against the Entities, and develop and secure Court approval of his distribution plan. The Receiver's review of relevant records and information enabled him to complete his MIMO accounting of the net contributions to the Entities from their investors and creditors, which, in turn, served as the basis for his claims process.

### B. Asset Recovery And Administration.

#### 1. Cash Assets.

The Receiver successfully recovered Receivership Assets, in the form of cash, from a variety of sources, including:

- Cash at Defendant bank accounts totaling approximately $486,000;
- Rents from the Properties (discussed below) totaling approximately $642,000;
- Income from operating the Oil Company (discussed below) totaling approximately $2.1 million;
- A pre-receivership insurance claim totaling approximately $102,000; and
- Tax refunds and other miscellaneous deposits totaling approximately $19,000.

In addition, the Receiver secured the turn-over of approximately $95,000 in funds from Mr. Nase's personal Wells Fargo account, which funds the Receiver traced to the Entities, recovered approximately $14,000 from the sale of

miscellaneous vehicles and equipment, and recovered more than $220,000 in cash proceeds from the disposition of the Receivership Entities' inventory of solar panels, electronic control units, inverters, and related solar panel servicing agreements (collectively, the "Solar Assets"). Specifically with respect to the Solar Assets, the Receiver sold the Solar Assets to Wind Tex, Inc. for over $220,000, or more than $20,000 above the Receiver's initial valuation of the Solar Assets.

### 2. Residential Real Properties.

The Receiver initially assumed control and management of sixty-two (62)[2] Properties in which the Receivership Entities had an interest, and immediately undertook efforts to collect rents and re-lease vacant Properties so as to maximize returns to the Receivership Entities. In addition to ordinary rent collection, maintenance, and debt service, the Receiver handled issues relating to problematic tenants, tenant evictions, and capital expenditures in renovating units for rental. Once the Receiver took those actions that he deemed necessary and appropriate to maximize the value of the Properties, he petitioned the Court for authority to establish sales procedures to govern the sale of the Properties out of receivership.

On September 19, 2016, the Court entered its Order Granting Stipulation to Waive Requirements of 28 U.S.C. § 2001(a) and (b) in Connection With, and to Establish Sales Procedures for Receiver's Sales of Residential Real Property (ECF No. 93). Thereafter, the Receiver promptly commenced the marketing and sale of those Properties for which complete record title ownership was vested in the Receivership Entities. However, a significant number of the Properties were complicated by the fact that, in the pre-receivership period, partial or fractional interests in many of them had been conveyed to Entity investors. Although some Entity investors failed or refused to cooperate in restoring the fractional interests

---

[2] Of these Properties, four (4) were returned after confirmation that they were not subject the receivership, six (6) were abandoned to foreclosures by VMI (with Court permission), and fifty-two (52) were successfully marketed and sold.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

they had been conveyed to the Receiver, the Receiver was ultimately successful in restoring all outstanding interests in the Properties to the Receivership Entities. In total, the Receiver's successful marketing and sale efforts for the Properties resulted in gross proceeds exceeding $7.2 million.

Although the Receiver successfully marketed and sold the majority of the Properties, he identified a total of six (6) Properties that potentially reflected a net liability to the Estate, and which he ultimately abandoned in accordance with the Court's instructions.

### 3. Oil Company.

The Receiver administered the Oil Company as a going concern since the inception of this matter, until its disposition via sale out of receivership in September 2019. At the inception of the receivership, the Oil Company was in dire straits, suffering from long-deferred maintenance and a number of longstanding creditor and vendor disputes that were affecting its productivity and profitability. In addition, the Oil Company was subject to fractionalized ownership interests, which were conveyed to investors in the pre-receivership period as part of the Entities' so-called liquidation plan.

Over the course of the receivership, the Receiver successfully addressed many of these issues, including restoring the certain, fractionalized ownership interests in the Oil Company to the Entities, thereby enabling the Receiver to market and sell the Oil Company in accordance with Court-approved procedures, and increased the Oil Company's productivity and profitability. Indeed, the successful operation of the Oil Company significantly supported the costs of the instant receivership. To that end, during the duration of the receivership, the Receiver's administration and operation of the Oil Company as a going concern generated $2.1 million in gross revenues, before proceeds from the sale of its Assets, for the benefit of the Receivership Entities, and their investors and creditors.

In addition, the Receiver successfully administered the process of obtaining Court approval of the sale of the Oil Company, ultimately securing an offer of $900,000.00, which, when paid, constituted a significant recovery for the benefit of the Entities.  As reflected in his prior submissions, the Receiver worked diligently to locate a buyer for the Oil Company through commercially reasonably and customary channels including, but not limited to, specifically targeting buyers reasonably believed to be interested, or specializing, in the purchase of real and personal property similar to that owned by the Oil Company.  After an extended marketing and negotiation effort, the Receiver secured a prospective buyer and accepted his offer on an "as-is, where-is" basis, subject to the overbid procedures previously approved by the Court.  Subsequently, on July 10, 2018, via an Order Granting Motion of Receiver, David. P. Stapleton, for Order Authorizing and Approving Sale of the Assets of WM Petroleum and Target Oil & Gas Drilling, Inc.; Appointing Receiver to Conduct Auction For Qualified Bidders (ECF No. 381), the Court authorized the Receiver to consummate the sale of the Oil Company to the buyer, in a manner consistent with the Court-approved Purchase and Sale Agreement and the Court's prior orders regarding the sale of the Oil Company.  The Receiver successfully sold the Oil Company out of receivership in September 2019.

### C. Claims Development, Processing, And Distribution Plan.

The Court entered an order (ECF No. 335) granting the Receiver's October 31, 2017 Motion for Order:  (1) Establishing Summary Claims Procedures; (2) Setting Claims Bar Date; and (3) Approving Proposed Claim Form (ECF No. 311).  Thereafter, 265 timely claims, including a claim from VMI, were submitted to the Receiver, requesting aggregate payments of over $14.2 million.  Upon completing his processing of all timely claims, the Receiver compiled his recommendation for the treatment of those claims, presented to the Court in his November 2, 2018 Omnibus Motion for Order:  (1) Approving Receiver's Recommended Treatment of Claims; and (2) Authorizing Recommended

Distribution on Allowed Claims (ECF No. 393), pursuant to which the Receiver recommended that the Court allow, in whole or in part, a total of 236 investor claims, one Oil Company investor claim, 9 trade creditor or vendor claims, and that the remainder of the claims be either subordinated or denied. With respect to VMI, the Receiver paid VMI nearly $3.7 million, in the form of sale proceeds, principal and interest payments, and other costs during the course of his administration of the VMI-associated Properties. After additional briefing and a hearing, VMI ultimately agreed to withdraw and forever release its claim against the Receivership Entities.

Once the VMI claim was resolved, and the Court having approved the Receiver's recommended treatment of all other claims against the Receivership Entities, the Receiver made an interim distribution on allowed, non-subordinated claims, in the aggregate amount of $1.5 million, on a *pro rata* basis. As discussed below, the Receiver proposes making the Final Distribution on allowed, non-subordinated claims contemporaneously with the wind-down and termination of the instant receivership, on a *pro rata* basis, in the Final Distribution Amount.

**D. Receivership Estate Administration.**

1. Investor Communications.

Since the inception of the receivership, the Receiver has provided information and regular updates to investors and other interested parties via the receivership website, www.bicreceivership.com, via telephone, and through counsel. The Receiver, his staff, and Professionals routinely communicated directly with investors to apprise them of or address material developments in the receivership case, including with respect to the status of Receivership Asset recovery efforts, claims, and distributions.

2. Preparation and Submission of Necessary Tax Documents.

The Receivership Entities have had certain tax obligations over the course of the instant receivership, including the preparation and submission of appropriate federal and state tax returns, as well as the preparation and distribution of quarterly

(K-1) statements to investors. During the instant receivership, the Receiver has attended and continues to attend to these obligations, submitting necessary returns and providing necessary information to investors.

## IV. RECEIVERSHIP WIND-DOWN RECOMMENDATIONS.

The Receiver believes that he has now satisfied his obligations to the Estate, and has exhausted all reasonable efforts to recover additional Receivership Assets. Accordingly, the Receiver recommends that the Court authorize him to commence the termination of the instant receivership, as set forth below and in detail in the contemporaneously filed Wind-Down Motion. Specifically, the Receiver's recommendations are as follows:

### A. Payment of Fees and Expenses Of Receiver And His Professionals.

Concurrently with this Final Report, the Receiver and his Professionals have submitted their Final Fee Application, requesting payment of their respective outstanding fees and expenses already incurred, along with the fees and expenses anticipated to be incurred through the termination of the instant receivership. The Court has already approved the Receiver's and his Professionals' accrued administrative and professional fees through June 30, 2018, but as yet unpaid (the so-called "holdbacks"), in the aggregate amount of $420,424.78. Therefore, the Receiver respectfully requests authorization at this time to pay his and his Professionals': (1) unpaid holdbacks in the aggregate amount of $420,424.78; (2) outstanding administrative and professional fees and expenses accrued, but as yet unpaid, from July 1, 2018 through the date of this Final Report, in the aggregate amount of $451,649.56; and (3) anticipated fees and expenses of the Receiver and his Professionals to complete the wind-down and termination of the instant receivership, in the aggregate amount of $50,000, as set forth in further detail in the Final Fee Application.

**B. Undertake Receivership Wind-Down And Closing Tasks.**

The Receiver respectfully requests that the Court authorize and direct him to undertake the following recommended wind-down and termination procedures, as set forth below and in greater detail in the Wind-Down Motion, which include:

1. <u>Submission of Appropriate Tax Filings.</u>

The Receiver is required to submit appropriate tax returns for each calendar year of the pendency of the receivership. In connection with the wind-down and termination of the instant receivership, the Receiver will attend to all necessary submission of appropriate tax filings.

2. <u>Abandonment or Destruction of Records.</u>

Over the course of the instant receivership, the Receiver has obtained material relevant to the business and financial activities of the Receivership Entities, in hard copy and digital form. Some of these records contain private financial information and other sensitive information. The Receiver therefore requests that, no sooner than ninety (90) days after the entry of an order approving the Receiver's recommendations herein, the Receiver be authorized to abandon any documents containing non-private information, and destroy any documents containing private information.

3. <u>Discharge and Release of Receiver.</u>

As noted above, the only task remaining in the instant receivership, save those tasks associated with the wind-down and termination of the instant receivership, is the prospective Final Distribution. Accordingly, the Receiver believes that it is appropriate to present his Final Report, along with the Final Fee Application, and to request the Court to terminate the receivership case pending the completion of the Final Distribution and wind-down tasks. Therefore, in order to best preserve limited receivership resources and further limit the cost of administering the Estate, the Receiver recommends that the Court accept this Final Report and eliminate further reporting obligations in connection with the instant receivership. To that end, the

Receiver recommends that the Court only require him to submit a declaration (the "Final Declaration") attesting to the completion of the wind-down tasks and Final Distribution, and that the receivership case be terminated, without further Court order, upon the submission of the Final Declaration.

### 4. Final Distribution Of Receivership Assets.

As reflected in the Receiver's prior submissions to this Court, at which time he anticipated making a second, and presumably final, distribution on allowed, non-subordinated claims, and having completed his administration of the Estate, the Receiver is now prepared to make the Final Distribution, in the Final Distribution Amount. Accordingly, except for funds that are presently earmarked to pay for accrued and remaining fees and expenses, in accordance with this Court's orders, the Receiver proposes making the Final Distribution on allowed, non-subordinated claims contemporaneously with the wind-down and termination of the instant receivership, in the Final Distribution Amount, on a *pro rata* basis, again, as initially contemplated in the Receiver's Motion for Order Authorizing First Interim Distribution on Allowed, Non-Subordinated Claims (ECF No. 440).

The Receiver respectfully submits that upon the completion of his recommended Final Distribution, there will remain no receivership tasks to complete, save winding down and terminating the receivership. Accordingly, and as reflected in his concurrently submitted Wind-Down Motion, the Receiver recommends that this Court approve and accept this Final Report, including the attached Final Accounting, authorize the Receiver to make the recommended Final Distribution, permit the Receiver to undertake the tasks necessary and appropriate to wind-down the receivership, and thereafter terminate the receivership and discharge and release the Receiver, upon the Receiver's submission of the Final Declaration.

## V. CONCLUSION.

Based on the information presented above, the Receiver respectfully requests that this Court enter an order accepting the instant Final Report, including the appended Final Accounting, and approving the recommendations presented herein.

Dated: May 27, 2020

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
DAVID R. ZARO
JOSHUA A. DEL CASTILLO
NORMAN M. ASPIS

By:     */s/*   *Joshua A. del Castillo*
    JOSHUA A. DEL CASTILLO
    Attorneys for Receiver
    DAVID P. STAPLETON

**Exhibit 1**

**STANDARDIZED FUND ACCOUNTING REPORT for BIC Consolidated – Cash Basis**
Receivership; Civil Court Docket No. 1:16-cv-00344-LJO-JLT
Reporting Period 03/01/2016 to 03/31/2020

| | FUND ACCOUNTING (See instructions): | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| **Line 1** | **Beginning Balance (as of 03/01/2016)** | | 0.00 | |
| | **Increases in Fund Balance:** | | | |
| **Line 2** | **Business Income** | | 2,923,252.46 | |
| **Line 3** | **Cash and Securities** | | 588,440.03 | |
| **Line 4** | **Interest/Dividend Income** | | 279.81 | |
| **Line 5** | **Business Asset Liquidation** | | 8,436,611.14 | |
| **Line 6** | **Personal Asset Liquidation** | | | |
| **Line 7** | **Third-Party Litigation Income** | | | |
| **Line 8** | **Miscellaneous – Other** | | | |
| | **Total Funds Available (Lines 1 – 8):** | | | 11,948,583.44 |
| | *Decreases in Fund Balance:* | | | |
| **Line 9** | **Disbursements to Investors** | | 1,500,630.25 | |
| **Line 10** | **Disbursements for Receivership Operations** | | | |
| *Line 10a* | *Disbursements to Receiver or Other Professionals* | | 1,250,845.29 | |
| *Line 10b* | *Business Asset Expenses* | | 7,033,106.31 | |
| *Line 10c* | *Personal asset Expenses* | | | |
| *Line 10d* | *Investment Expenses* | | | |
| *Line 10e* | *Third-Party Litigation Expenses* | | | |
| |   1. Attorney Fees | | 575,795.09 | |
| |   2. Litigation Expenses | | | |
| | *Total Third-Party Litigation Expenses* | | | |
| *Line 10f* | *Tax Administrator Fees and Bonds* | | | |
| *Line 10g* | *Federal and State Tax Payments* | | 55,747.39 | |
| | **Total Disbursements for Receivership Operations** | | | 10,416,124.33 |
| **Line 11** | **Disbursements for Distribution Expenses Paid by the Fund:** | | | |
| *Line 11a* | *Distribution Plan Development Expenses:* | | | |
| |   1. Fees: | | | |
| |     Fund Administrator ...................................................... | | | |
| |     Independent Distribution Consultant (IDC) ................ | | | |
| |     Distribution Agent ...................................................... | | | |
| |     Consultants .................................................................. | | | |
| |     Legal Advisers ............................................................. | | | |
| |     Tax Advisers ............................................................... | | | |
| |   2. Administrative Expenses | | | |
| |   3. Miscellaneous | | | |
| | *Total Plan Development Expenses* | | | |
| *Line 11b* | *Distribution Plan Implementation Expenses:* | | | |
| |   1. Fees: | | | |
| |     Fund Administrator ...................................................... | | | |
| |     IDC ............................................................................. | | | |
| |     Distribution Agent ...................................................... | | | |
| |     Consultants .................................................................. | | | |
| |     Legal Advisers ............................................................. | | | |

**Exhibit 1**

|  |  | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
|  |       Tax Advisers ................................................................ |  |  |  |
|  |   2.   Administrative Expenses |  |  |  |
|  |   3.   Investor Identification: |  |  |  |
|  |       Notice/Publishing Approved Plan ............................... |  |  |  |
|  |       Claimant Identification ............................................... |  |  |  |
|  |       Claims Processing ...................................................... |  |  |  |
|  |       Web Site Maintenance/Call Center ............................. |  |  |  |
|  |   4.   Fund Administrator Bond |  |  |  |
|  |   5.   Miscellaneous |  |  |  |
|  |   6.   Federal Account for Investor Restitution (FAIR) Reporting Expenses |  |  |  |
|  | *Total Plan Implementation Expenses* |  |  |  |
|  | **Total Disbursements for Distribution Expenses Paid by the Fund** |  |  |  |
| **Line 12** | **Disbursements to Court/Other:** |  |  |  |
| *Line 12a* | *Investment Expenses/Court Registry Investment System (CRIS) Fees* |  |  |  |
| *Line 12b* | *Federal Tax Payments* |  |  |  |
|  | **Total Disbursements to Court/Other:** |  |  |  |
|  | **Total Funds Disbursed (Lines 9 – 11):** |  |  | 10,416,124.33 |
| **Line 13** | **Ending Balance (as of 03/31/2020):** |  |  | 1,532,459.11 |
| **Line 14** | **Ending Balance of Fund – Net Assets:** |  |  |  |
| *Line 14a* | *Cash & Cash Equivalents* |  | 1,532,459.11 |  |
| *Line 14b* | *Investments* |  |  |  |
| *Line 14c* | *Other Assets or Uncleaned Funds* |  |  |  |
|  | Total Ending Balance of Funds – Net Assets |  |  | 1,532,459.11 |
| **OTHER SUPPLEMENTAL INFORMATION:** |  |  |  |  |
|  | ***Report of Items NOT To Be Paid by the Fund:*** | **Detail** | **Subtotal** | **Grand Total** |
| **Line 15** | **Disbursements for Plan Administration Expenses Not Paid by the Fund:** |  |  |  |
| *Line 15a* | *Plan Development Expenses Not Paid by the Fund:* |  |  |  |
|  |   1.   Fees: |  |  |  |
|  |       Fund Administrator ..................................................... |  |  |  |
|  |       IDC ............................................................................... |  |  |  |
|  |       Distribution Agent ....................................................... |  |  |  |
|  |       Consultants .................................................................. |  |  |  |
|  |       Legal Advisers ............................................................. |  |  |  |
|  |       Tax Advisers ................................................................ |  |  |  |
|  |   2.   Administrative Expenses |  |  |  |
|  |   3.   Miscellaneous: |  |  |  |
|  | *Total Plan Development Expenses Not Paid by the Fund* |  |  |  |
| *Line 15b* | *Plan Implementation Expenses Not paid by the Fund:* |  |  |  |
|  |   1.   Fees: |  |  |  |
|  |       Fund Administrator ..................................................... |  |  |  |
|  |       IDC ............................................................................... |  |  |  |
|  |       Distribution Agent ....................................................... |  |  |  |
|  |       Consultants .................................................................. |  |  |  |
|  |       Legal Advisers ............................................................. |  |  |  |
|  |       Tax Advisers ................................................................ |  |  |  |
|  |   2.   Administrative Expenses |  |  |  |
|  |   3.   Investor Identification: |  |  |  |
|  |       Notice/Publishing Approved Plan ............................... |  |  |  |
|  |       Claimant Identification ............................................... |  |  |  |

**Exhibit 1**

|  |  |  |  |  |
|---|---|---|---|---|
|  | Claims Processing ............................................................ |  |  |  |
|  | Web Site Maintenance/Call Center ................................ |  |  |  |
|  | 4. Fund Administrator Bond |  |  |  |
|  | 5. Miscellaneous |  |  |  |
|  | 6. FAIR Reporting Expenses |  |  |  |
|  | *Total Plan Implementation Expenses Not Paid by the Fund* |  |  |  |
| *Line 15c* | *Tax Administrator Fees & Bonds Not Paid by the Fund* |  |  |  |
|  | **Total Disbursements to Court/Other Not Paid by the Fund:** |  |  |  |
| **Line 17** | **DC & State Tax Payments** |  |  |  |
| **Line 18** | **No. of Claims:** |  |  |  |
| *Line 18a* | *# of Claims Received This Reporting Period ...................................................259* |  |  |  |
| *Line 18b* | *# of Claims Received Since Inception of Fund ...................................................259* |  |  |  |
| **Line 19** | **No. of Claims/Investors:** |  |  |  |
| *Line 19a* | *# of Claimants/Investors Paid This Reporting Period...........................................243* |  |  |  |
| *Line 19b* | *# of Claimants/Investors Paid Since Inception of Fund .......................................243* |  |  |  |

Receiver:

By: _____
(signature)

David Stapleton
(printed name)

Receiver
(title)

Date: 4/27/2020_____

# PROOF OF SERVICE

*Securities and Exchange Commission v. BIC Real Estate Development Corporation and Daniel R. Nase, et al.*
USDC, Eastern District of California – Case No. 1:16-cv-00344-NONE-JLT

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 865 S. Figueroa Street, Suite 2800, Los Angeles, California 90017-2543.

On **May 27, 2020**, I caused to be served the document entitled: **FINAL REPORT AND ACCOUNTING OF RECEIVER, DAVID P. STAPLETON** on all the parties to this action addressed as stated on the attached service list.

☒ **OFFICE MAIL**: By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with the firm's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **OVERNIGHT DELIVERY**: I deposited in a box or other facility regularly maintained by Fedex, or delivered to a courier or drive authorized by said express service carrier to receive documents, a true copy of the foregoing document(s) in sealed envelope(s) or package(s) designed by the express service carrier, with fees for overnight delivery paid or provided for.

☐ **HAND DELIVERY**: I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **ELECTRONIC MAIL**: By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING**: By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX**: By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on **May 27, 2020** at Los Angeles, California.

/s/ *Martha Diaz*
Martha Diaz

# SERVICE LIST

*Securities and Exchange Commission v. BIC Real Estate Development Corporation and Daniel R. Nase, et al.*
USDC, Eastern District of California – Case No. 1:16-cv-00344-NONE-JLT

| | |
|---|---|
| Franchise Tax Board (FTB)<br>P.O. Box 2952<br>Sacramento, CA 95812-2952 | VIA U.S. MAIL |
| Internal Revenue Service<br>880 Front Street<br>San Diego, CA 92101-8869 | VIA U.S. MAIL |